STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

William L. STEGER, Respondent.

No. S.C.B.D. 2051.

Supreme Court of Oklahoma.

Oct. 4, 1966.

Harry G. Foreman, Oklahoma City, for complainant.

William Lewis Steger, pro se.

Gus Rinehart, Oklahoma City, for respondent.

PER CURIAM:

The Executive Council of the Oklahoma Bar Association has recommended to this court that William Lewis Steger, hereinafter referred to as "Respondent", be suspended indefinitely from the practice of law, with the right to apply for reinstatement upon the expiration of a twelve month period.

Two counts of alleged unprofessional conduct were contained in a complaint filed by the Oklahoma Bar Association against the Respondent on September 12, 1963. In his response thereto, Respondent admitted the allegations of the complaint.

The Trial Examiner conducted a hearing on the matter on November 27, 1964 at which Respondent appeared, stated that he had no defense and waived the examination of witnesses.

The first count charged that the Respondent wrongfully converted to his own use and benefit the sum of $500.00, which sum actually was a fee payable to his co-counsel, an out-of-state attorney. That Respondent,

in spite of repeated requests from his co-counsel, wrongfully neglected and refused to forward the money to co-counsel, but converted the same to his own use.

The second count charged that Respondent withheld the sum of $1,537.80 from a personal injury settlement, ostensibly for the payment of medical expenses incurred by his client, but that instead of remitting to the hospital and doctors who were entitled to receive the money, he converted the money to his own use and benefit. Respondent did remit to his clients their share of the settlement money.

The Trial Examiner found the Respondent guilty on both counts, as charged, and in due course, the matter is before us. All proceedings herein have been in accord with Article VII, Part I, of the Rules Creating, Controlling and Regulating the Oklahoma Bar Association.

In Oklahoma, an attorney, upon his admission to the Bar, takes an oath that he will act in the office of attorney in this court according to his best learning and discretion with all good fidelity as well to the court as to his client. 5 O.S.1961, Sec. 2.

It is further provided by statute:

"Disciplinary power and revocation of permit—The Supreme Court of the State of Oklahoma shall have the exclusive power and authority to discipline attorneys and counselors at law or revoke the permit to practice law granted to attorneys and counselors at law and the rules of conduct of attorneys and counselors of law in this State shall be such as are now or may hereafter be prescribed by the statutes of Oklahoma and the rules of the Supreme Court." 5 O.S.1961, Sec. 13.

By Article 10 of Rules Creating, Controlling and Regulating the Oklahoma Bar Association (promulgated pursuant to such statutory authority, see Chapter 1, Appendix to Title 5 O.S.1961) it is provided:

"The Court adopts the canons of ethics of the American Bar Association as the standard of professional conduct of attorneys at law, and all members of the Oklahoma Bar Association shall be governed

thereby, and any attorney violating any such canons shall be subject to discipline or disbarment, as herein provided."

In turn, it is provided in part by Canon 11 of the Canons of Professional Ethics of the American Bar Association as follows:

"II. Dealing with Trust Property

\* \* \* \* \* \*

Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

In each of the two instances of misconduct, the Respondent was guilty of violating the provisions of Canon 11, above set out.

■ The question presented to us is whether Respondent's conduct as above set out justifies disciplinary action and the extent thereof, if any. Our primary consideration is what action by the court will best serve the interest of the public and the administration of justice. State ex rel. Oklahoma Bar Ass'n v. Trower, Okl., 381 P.2d 142. A disciplinary proceeding such as this is "not for the primary purpose of punishing an attorney at law, but for the studied purpose of promoting and preserving the integrity of the bar for the common good". State ex rel. Oklahoma Bar Ass'n v. Nix, Okl., 295 P.2d 286, 293.

It should be pointed out that evidence of good character and reputation was not before the Complainant at the time disciplinary action was being considered by them. After submission of the case on appeal the Respondent filed a Motion to Remand to Executive Council. The Motion also sought permission for the Respondent to supplement the record by affidavits pertaining to his character and reputation in mitigation of the recommended penalty. In complainant's response to this Motion, it stated:

"Complainant has no objection if Respondent desires to file affidavits with

the court concerning his character and reputation. It is submitted, however, that all things can be considered by this court in making its determination rather than resubmitting the case to the Executive Council."

In accordance with complainant's response the Motion to Remand was denied and Respondent was permitted to file affidavits of character and reputation with this court. Numerous affidavits have been submitted to us attesting to the good character and legal competency of the Respondent. Businessmen, attorneys, a former member of the judiciary, city officials, as well as neighbors and close friends of the Respondent, have, by their affidavits, demonstrated to us that except for the period of time involved in the two counts, that Respondent has been a valuable member of the Bar of this state for over thirty years. The Respondent was admitted to practice in 1936; served as county attorney of Bryan County from 1939 to 1942 when he resigned to become a member of the United States Navy; and has been engaged in the private practice of law since 1945 in Durant, Oklahoma.

Also, in mitigation, it must be recognized that the Respondent was undergoing serious financial difficulty during the period involved in these two counts. He was heavily indebted and was having difficulty in meeting his obligations. He admits to using the funds involved in the two counts, but stated that he intended to satisfy the debts within a short time but was never able to accumulate the money to do so. The Respondent, through help of relatives and friends, was eventually able to fully pay all of the sums referred to in the complaint. Each individual to whom money was owed submitted a statement, after receiving restitution, indicating that they did not wish to press the matter further and that they believe that Respondent's future conduct will be above reproach.

 We would be remiss in our duty if we did not give careful and thoughtful consideration to the evidence of good character and reputation of the Respondent, and his exemplary professional standing for over thirty years. See In re Green, 173 Okl. 460, 49 P.2d 197.

In the case of In re Hadwiger et al., 167 Okl. 307, 27 P.2d 604, 605, quoting from People ex rel. Chicago Bar Ass'n v. Lotterman et al., 353 Ill. 399, 187 N.E. 424, we said:

"It is the duty of the court to protect the public against the wrongful acts of unscrupulous and dishonest attorneys. However, the court also owes a duty to attorneys who, though they have made a mistake in their professional conduct, have not done so through any base, sordid, or dishonest motives."

 We believe that a reduction in the period of suspension for a period of sixty days better accords with justice in this case. The Respondent's license to practice law as member of the Oklahoma Bar is therefore suspended for a period of sixty days beginning with the date this opinion becomes final.

HALLEY, C. J., and DAVISON, WILLIAMS, IRWIN, BERRY and LAVENDER, JJ., concur.

BLACKBIRD and HODGES, JJ., concur in part and dissent in part.

HODGES, Justice (concurring in part and dissenting in part).

I agree with the opinion of the majority except that I feel that the punishment imposed was too severe considering all the facts and circumstances of this case.

The majority recognized that the Respondent was undergoing serious financial difficulties during the period involved in these two counts. These difficulties arose in large measure because the Respondent was overly generous with his clients and his family. The affidavits introduced in behalf of the Respondent establish that, through the help of relatives and friends, his financial affairs are now in order.

The record shows that the funds *were not* used by the Respondent out of any desire

for personal gain or with a deliberate premeditation to do wrong. In each instance the clients of the Respondent promptly received their just distribution. Although the Respondent did withhold funds from an attorney, two doctors and a hospital in direct violation of the canons of professional ethics, these funds were subsequently paid and the complainants have now indicated that they do not wish to press the matter further and that they believe the Respondent's future conduct will be above reproach. One of the original complainants, a doctor, now makes the following plea in the Respondent's behalf:

"I feel sure that he sees the error of his ways and believe, that if he is given the opportunity * * * that his conduct would be above reproach.

"I would support him in any way possible * * * He is worth salvaging and I am willing to appear in his behalf either on paper, recording or in person to help him."

The good character and reputation of the Respondent has been exemplified by his professional conduct in the practice of law for over thirty years. There is no evidence of misconduct by the Respondent throughout his lengthy practice other than the two instances charged, which occurred under financial stress. It is apparent that the Respondent possesses a good reputation for honesty, and trustworthiness in his community. Many responsible persons in the community have attested to his legal competency, devotion to his profession and to his family, and his good name in the community. He has devoted much time and energy to provide legal assistance and advice, without hope of pecuniary remuneration, to literally hundreds of indigent clients over the years. The Respondent's present attitude is reflected by the following statement contained in his supplemental response:

"I am deeply aware that this restitution does not exonerate me, but I will henceforth make additional restitution to my Bar by exemplary conduct and diligence in all of my affairs."

I do not wish to minimize the seriousness of the Respondent's misconduct. His failure to account promptly for the funds intrusted to his care is a direct violation of the standards of professional conduct, and should not be condoned or excused by this Court. However, in view of his past professional conduct, good character and reputation for over thirty years, together with evidences of his present attitude for exemplary conduct in the future, I deem a public censure and reprimand by his court to be the appropriate disciplinary action. In my opinion this punishment would be more in accordance with even justice and the interest of the public.